## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| TAMARA BULLOCK, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>       Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tamara Bullock ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Ocean Spray Cranberries, Inc. ("Defendant" or "Ocean Spray"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

### NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of Defendant's cranberry juice products (the "Products")[1] that claim to have "NO ARTIFICIAL FLAVORS OR PRESERVATIVES." This representation is false and/or misleading because the Products contain ascorbic acid—a known preservative commonly used in food products.

2. Defendant's "NO ARTIFICIAL FLAVORS OR PRESERVATIVES" representation is featured on the Products' labeling in order to induce health-conscious consumers to purchase foods that are free from preservatives. Defendant markets its Products in

---

[1] The Products encompass all of Defendant's canned and bottled juices that are advertised as containing "NO ARTIFICIAL FLAVORS OR PRESERVATIVES" but contain ascorbic acid.

a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

3.      Defendant has profited unjustly as a result of its deceptive conduct.  Plaintiff therefore asserts claims on behalf of herself and similarly situated purchasers for violation of Massachusetts General Laws Ch. 93A, *et seq.*, New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

5.      This Court has personal jurisdiction over Defendant Ocean Spray Cranberries, Inc. ("Defendant") because Defendant maintains its principal place of business in Massachusetts.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Ocean Spray Cranberries, Inc. resides in this District.

## PARTIES

7.      Plaintiff Tamara Bullock is a citizen of New York who resides in New York, New York.  In or around January 2023, Ms. Bullock purchased an Ocean Spray Original Cranberry Juice Cocktail from a local Key Foods grocery store located in New York, New York for approximately $5.  In purchasing the Product, Ms. Bullock relied on Defendant's false, misleading, and deceptive marketing of the Product containing "NO ARTIFICIAL FLAVORS OR PRESERVATIVES."  Ms. Bullock understood that "NO ARTIFICIAL FLAVORS OR

2

PRESERVATIVES" meant the Product did not contain any preservatives. However, the Product she purchased contained ascorbic acid, a preservative.  Had Ms. Bullock known the "NO ARTIFICIAL FLAVORS OR PRESERVATIVES" representation was false and misleading, she would not have purchased the Product or at the very least, would have only been willing to purchase the Product at a lesser price.

8.      Defendant Ocean Spray Cranberries, Inc. is a corporation organized under the laws of Massachusetts with its headquarters at 1 Ocean Spray Drive, Lakeville-Middleboro, Massachusetts 02349.  Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

9.      **Defendant misrepresents that the Products contain "NO ARTIFICIAL FLAVORS OR PRESERVATIVES."** Defendant advertises on the labels of the Products that they contains "NO ARTIFICIAL FLAVORS OR PRESERVATIVES." Thus, reasonable consumers are led to believe the Products are free from preservatives.  However, the Products contain ascorbic acid, a well-known preservative.  Examples of the Products' labeling, along with their ingredient panels, are depicted below:

//

3



INGREDIENTS: Filtered Water, Cranberry Juice (water, cranberry juice concentrate), Sugar, Ascorbic Acid (vitamin C), Vegetable Concentrate for Color.

10.    **Ascorbic acid is a preservative.**  The FDA defines a chemical preservative as

"any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

11.     Ascorbic acid is a chemically modified form of vitamin C, which, pursuant to FDA regulations, is commonly used in foods as a preservative.  21 C.F.R. § 182.3013.

12.     Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness.  Although Defendant identifies ascorbic acid as a source of vitamin C, Defendant adds it for its preservative qualities as well.

13.     The FDA regulates the use of ascorbic acid in the formulation of wine and juice "to prevent oxidation of color and flavor components of juice," and it "may be added to grapes, other fruit (including berries), and other primary wine making materials or to the juice of such materials."  27 C.F.R. § 24.246.

14.     All of Defendant's Products that contain ascorbic acid are made from cranberries. Based on industry standards, therefore, Defendant added ascorbic acid to the Products to prevent their "oxidation of color and flavor"—something which happens so often to these juice products, that it prompted the FDA to promulgate the pertinent preservatives regulations set forth above. *Id.*

15.     The FDA also classifies and identifies ascorbic acid as preservatives in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how ascorbic acid are used as preservatives in beverages.[2]

---

[2] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-

16.     The FDA's view of this matter is further bolstered by a Warning Letter that it sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[3]

17.     The USDA has also recognized that "[a]scorbic acid is most commonly used as a preservative to prevent enzymatic browning reactions that occur during processing and post-processing storage."[4]  Moreover, the USDA found that "all commercial ascorbic acid [is] synthetically derived" and thus artificial.[5]

18.     Based on the foregoing, Defendant's use of ascorbic acid in their Products renders their "NO ARTIFICIAL FLAVORS OR PRESERVATIVES" representation false and misleading.  This is true even if Defendant's subjective intention was to add ascorbic acid to impart taste/tartness or vitamin supplement to the Products.  This conclusion is buttressed by the fact that ascorbic acid can function as a preservative even when it is used only in trace amounts.[6]

19.     **Subjective intent of use is immaterial.**  Even if the Products' ascorbic acids do

_____

colors (last accessed November 30, 2022).

[3] FDA, Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated (Oct. 6, 2010), available at http://web.archive.org/web/20101109083452/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm228663.htm (last accessed February 23, 2023).

[4] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

[5] *Id.* at 10.

[6] *See* Taylor & Francis, *Antimicrobials In Food* 108, 113 (P. Michael Davidson et al. eds., 3d ed. 2005), http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed February 2, 2023).

not, in fact, function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.");[7] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or *capable* of preserving") (emphasis added).[8]

20.    **Defendant exploits consumer demand for preservative-free food.**  By representing the Products have "NO ARTIFICIAL FLAVORS OR PRESERVATIVES," Defendant seeks to capitalize on consumers' preference for products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods.  In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[9]

---

[7] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 30, 2022).

[8] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 30, 2022).

[9] *See, Free-From Food Trends-US-May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

21.     According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, they often chose products with "No Preservatives" labels.[10]

22.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[11]  Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

23.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

**CLASS ACTION ALLEGATIONS**

24.     Plaintiff seeks to represent a class defined as all persons in the United States who, during the applicable statute of limitations period, purchased Defendant's Products (the "Class").

25.     Plaintiff also seeks to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the Class, the "Classes").

26.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the

---

[10] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[11] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed November 30, 2022).

pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

27.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; whether Plaintiff and the members of the Classes are entitled to statutory damages; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

28.    The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

29.    Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

30.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system

9

presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York General Business Law ("G.B.L.") § 349**
**(On Behalf of the New York Subclass)**

31.      Plaintiff incorporates by reference each of the allegations set forth in the

preceding paragraphs.

32.      Plaintiff brings this claim on behalf of the New York Subclass.

33.      New York's General Business Law § 349 prohibits deceptive acts or practices in

the conduct of any business, trade, or commerce.

34.      In its sale of Products throughout the state of New York, at all relevant times

herein, Defendant conducted business and trade within the meaning and intendment of New

York's General Business Law § 349.

35.      Plaintiff and the New York Subclass members are consumers who purchased the

Products from Defendant for their personal use.

36.      By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair,

and misleading acts and practices by conspicuously representing on the packaging of the

Products that it contains "NO ARTIFICIAL FLAVORS OR PRESERVATIVES."  Despite that

representation, however, the Products contain ascorbic acid, a known preservative.

37.      The foregoing deceptive acts and practices were directed at consumers.

38.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

39.     As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

40.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT II
### Violation of New York G.B.L. §350
### (On Behalf of the New York Subclass)

41.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

42.     Plaintiff brings this claim on behalf of the New York Subclass.

43.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

44.     Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that it contains "NO ARTIFICIAL FLAVORS OR PRESERVATIVES."  Despite that representation, however, the Products contain ascorbic acid, a known preservative.

45.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

46.     Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

47.     As a result of Defendant's false advertising, Plaintiff and the New York Subclass

11

members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

48.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

<u>**COUNT III**</u>
**Breach of Express Warranty**
**(On behalf of the Class and the New York Subclass)**

49.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

50.     Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against Defendant.

51.     Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain "NO ARTIFICIAL FLAVORS OR PRESERVATIVES."

52.     Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Class and New York Subclass.

53.     In fact, the Products do not conform to Defendant's representations and warranties because the Products contain ascorbic acid, a known preservative.  By falsely representing the Products in this way, Defendant breached its express warranty.

54.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they contained a preservative.

55.     On February 14, 2023, Plaintiff sent Defendant, via certified mail, a pre-suit

notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant make full restitution by refunding the monies received therefrom.

**COUNT IV**
**Unjust Enrichment**
**(In the Alternative)**

56.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

57.     Plaintiff brings this claim individually and on behalf of members of the Classes against Defendant.

58.     Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

59.     Defendant has knowledge of such benefits.

60.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchase of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contains "NO ARTIFICIAL FLAVORS OR PRESERVATIVES" when in fact they contains ascorbic acid, a known preservative.

61.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members as ordered by the Court.

**COUNT V**
**Violation of the Massachusetts Unfair and Deceptive Business Practices Act,**
**Mass. Gen. Laws Ch. 93A, *et seq.***
**(On behalf of the Class)**

62.     Plaintiff incorporates by reference and re-allege each and every allegation set

13

forth above as though fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the

Classes against Defendant.

64.     Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business

Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the

conduct of any trade or commerce."  An act is "deceptive" under Chapter 93A "if it could

reasonably be found to have caused a person to act differently from the way he otherwise would

have acted."  *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

65.     Section 9 provides: "Any person … who has been injured by another person's use

or employment of any method, act or practice declared to be unlawful by section two … may

bring an action in the superior court … for damages and such equitable relief, including an

injunction, as the court deems to be necessary and proper … Any persons entitled to bring such

action may, if the use or employment of the unfair or deceptive act or practice has caused similar

injury to numerous other persons similarly situated and if the court finds in a preliminary hearing

that he adequately and fairly represents such other persons, bring the action on behalf of himself

and such other similarly injured and situated persons."

66.     Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person,"

and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale

Products that directly or indirectly affect the people of Massachusetts.  Additionally, Defendant's

principal place of business is in Massachusetts.

67.     By engaging in the acts and omissions alleged above and incorporated herein,

Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the

conduct of trade or commerce.

14

68.     Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

69.     Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

70.     Defendant's conduct is also misleading in a material way by representing on the packaging of the Products that it contains "NO ARTIFICIAL FLAVORS OR PRESERVATIVES."  Despite that representation, however, the Products contain ascorbic acid, a known preservative.

71.     Plaintiff and members of the Classes suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

72.     Mass. Gen. Laws Ch. 93A, *et seq.* represents a fundamental public policy of the Commonwealth of Massachusetts.

73.     For each loss, Plaintiff and each member of the Classes may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

74.     Because Defendant acted willfully or knowingly, Plaintiff and each member of the Classes may recover up to three but not less than two times this amount.  In addition, Plaintiff may recover attorneys' fees and costs.

75.     Plaintiff and the members of the Classes may also pray for the imposition of injunctive relief which limits and polices Defendant's representations within or reaching Massachusetts. The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff, members of the Classes, and the general public will be irreparably harmed

absent the entry of permanent injunctive relief against Defendant.  Plaintiff, members of the

Classes, and the general public lack an adequate remedy at law.  A permanent injunction against

Defendant is in the public interest.  Defendant's unlawful behavior is capable of repetition or re-

occurrence absent the entry of a permanent injunction.

76.     In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiff's counsel served

Defendant with written notice of their violation of Ch. 93A and a demand for relief on February

14, 2023.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tamara Bullock, individually and on behalf of all others

similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and New York Subclass under Rule 23 of the

Federal Rules of Civil Procedure and naming Plaintiff as representatives of the

Class and New York Subclass and Plaintiff's attorneys as Class Counsel to

represent the Class and the New York Subclass members;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted

herein;

(c)     For an order finding in favor of Plaintiff, the Class, and the New York Subclass

on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the

Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order enjoining Defendant from continuing the illegal practices detailed

herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)     For an order awarding reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.


Dated:  October 27, 2023                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By: */s/ Joel D. Smith*
                                                    Joel Smith

                                            Joel D. Smith (BBO No. 712418)
                                            1990 North California Blvd., Suite 940
                                            Walnut Creek, CA  94596
                                            Telephone: (925) 300-4455
                                            Facsimile:  (925) 407-2700
                                            Email: jsmith@bursor.com

                                            **BURSOR & FISHER, P.A.**
                                            Alec M. Leslie (*pro hac vice* forthcoming)
                                            Julian C. Diamond (*pro hac vice* forthcoming)
                                            1330 Avenue of the Americas, 32nd Floor
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile:  (212) 989-9163
                                            Email: aleslie@bursor.com
                                                    jdiamond@bursor.com

                                            *Attorneys for Plaintiff*